1  **WO**
2
3
4
5
6             **IN THE UNITED STATES DISTRICT COURT**
7             **FOR THE DISTRICT OF ARIZONA**
8

| | |
|---|---|
| Thomas Hurst, | No. CV-16-00783-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Thomas Hurst applied for Social Security Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") in February 2014, alleging disability beginning March 1, 2013. After state agency denials, Hurst appeared for a hearing before an administrative law judge ("ALJ"). A vocational expert ("VE") also was present and testified. Following the hearing, the ALJ issued a written decision finding that Hurst was not disabled within the meaning of the Social Security Act ("SSA"). The ALJ's decision became the agency's final decision after the Social Security Administration Appeals Council denied Hurst's request for review. Hurst now seeks judicial review of that decision. For the following reasons, the decision of the Commissioner of Social Security Administration is reversed and this matter remanded for an award of benefits.

## **BACKGROUND**

To determine whether a claimant is disabled for purposes of the SSA, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of

proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. If not, the claimant is disabled.

At step one, the ALJ determined that Hurst meets the insured status requirements of the SSA through September 30, 2016, and has not engaged in substantial gainful activity since his alleged disability onset date. (A.R. 14.) The ALJ found at step two that Hurst's hypertension, obstructive sleep apnea, degenerative disc disease, history of sinus tachycardia, autonomic dysfunction, orthostatic intolerance, depressive disorder, and personality disorder are severe impairments, but concluded at step three that they do not meet or medically equal the severity of an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. (*Id.* at 14-15.) At step four, the ALJ found that Hurst has the RFC to perform:

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following exceptions. The claimant should not be exposed to hazards such as moving machinery and unprotected heights. He is able to understand, remember,

> and carry out simple, routine and repetitive work tasks involving simple instructions. In addition, the claimant is limited to occasional public contact.

(*Id.* at 18-19.) Based on this RFC, the ALJ found that Hurst is unable to perform his past relevant work. (*Id.* at 22.) At step five, however, after considering Hurst's age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Hurst can perform. (*Id.* at 22-23.) Accordingly, the ALJ found that Hurst is not disabled within the meaning of the SSA. (*Id.* at 24.)

## **STANDARD OF REVIEW**

It is not the district court's role to review the ALJ's decision de novo or otherwise determine whether the claimant is disabled. Rather, the court is limited to reviewing the ALJ's decision to determine whether it "contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The court, however, "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn*, 495 F.3d at 630 (internal quotations and citation omitted). Nor may the court "affirm the ALJ on a ground upon which he did not rely." *Id.*

## **DISCUSSION**

Hurst argues that the ALJ erroneously rejected the assessments of his three treating physicians and his own testimony about the severity of his symptoms. (Doc. 13 at 1.) Hurst also argues that the ALJ erred by not articulating a basis for her RFC finding, but admits that this issue is moot if the Court finds in his favor on any of the other grounds. (*Id.* at 1, 22-23.) Finally, Hurst requests that the Court remand the matter for an

immediate award of benefits instead of for further proceedings. Having reviewed the record and the parties' briefs, the Court concludes that the ALJ erred in rejecting the opinion of Dr. Seth Kauffman, Hurst's treating neurologist, and that had the ALJ credited Dr. Kauffman's opinion she would have been compelled to find Hurst disabled. Because this conclusion is dispositive, the Court does not reach Hurst's alternative assignments of error.

**I. The ALJ Improperly Rejected the Opinion of Dr. Kauffman**

Dr. Kauffman completed the agency's "Physical Residual Functional Capacity Assessment" form in April 2014. (A.R. 424-31.) He opined that Hurst could: (1) frequently lift less than 10 pounds and only occasionally lift 20, (2) stand and/or walk for less than 2 hours in an 8-hour workday, and (3) sit less than 6 hours in an 8-hour workday. (*Id.* at 425.) He also opined that Hurst was limited in his ability to push and pull with both upper and lower extremities; that he could never balance, stoop, kneel, and crouch; that he could only occasionally climb ramps and stairs; that he was limited in his ability to reach, handle, finger, and feel; and that he should avoid all exposure to extreme cold and heat, humidity, fumes, and hazardous machinery. (*Id.* at 426-28.) Additionally, though he did not assess formal limitations in speaking, Dr. Kauffman noted that Hurst's shortness of breath is exacerbated when "talking too long." (*Id.* at 428.) Dr. Kauffman based his opinions on Hurst's autonomic dysfunction and results from tilt table testing, and cited concerns that engaging in these activities would exacerbate Hurst's symptoms, such as shortness of breath, lightheadedness, and loss of consciousness. (*Id.* at 425, 428.)

A treating physician's opinion is entitled to substantial deference. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight generally should be given to the opinion of a treating physician than to the opinions of non-treating physicians because treating physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Thus, where a treating physician's opinion is not contradicted by another physician it may be rejected only for "clear and convincing" reasons, and where it is

contradicted, it still may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830.

Moreover, Social Security Rules expressly require a treating source's opinion on an issue of a claimant's impairment be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a treating source's opinion is not given controlling weight, the weight that it will be given is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence supporting the opinion, consistency with the record as a whole, the source's specialization, and other factors. *Id.* Finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion should be rejected:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §404.1527. . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Orn*, 495 F.3d at 631-32 (quoting Social Security Ruling 96-2p).

Despite the proverbial thumb on the scale in favor of adopting the opinion of a claimant's treating physician, the ALJ gave "minimal weight" to Dr. Kauffman's opinion, ostensibly because Dr. Kauffman "does not provide a persuasive explanation regarding these restrictions" and "his assessment is inconsistent with his own records." (A.R. 19.) The Court understands the ALJ's rationale to be that Dr. Kauffman's questionnaire responses lack sufficient explanation and were not otherwise supported by his treatment notes. Because Dr. Kauffman's opinion is contradicted by the opinions of state agency

reviewers (*Id.* at 16, 109-11, 130-32), the ALJ was required to articulate specific and legitimate reasons, supported by substantial evidence in the record, for discounting it.[1] Only the second of the ALJ's articulated reasons is specific and legitimate, and neither is supported by substantial evidence.

First, Dr. Kauffman's questionnaire was not devoid of explanation. Instead, Dr. Kauffman explained that his opinion was based on Hurst's autonomic dysfunction, as evidenced by the results of tilt table testing, and that he assessed such restrictive limitations because engaging in the activities at issue exacerbates Hurst's shortness of breath and lightheadedness, and even results in loss of consciousness. To the extent the ALJ found this explanation unpersuasive, she failed to articulate a specific reason.

Second, Dr. Kauffman's treatment records amply support these symptoms and their effects. For example, Dr. Kauffman saw Hurst on December 5, 2013 for weakness and shortness of breath. (A.R. 464.) His notes highlight Hurst's previous diagnosis of sinus tachycardia and symptoms of loss of consciousness, weakness, and lightheadedness upon standing for more than 15 minutes. (*Id.*) Hurst underwent tilt table testing that same month, which revealed abnormal results consistent with autonomic dysfunction (though the cause was not clear) and reproduced near syncope. (*Id.* at 419, 425, 438, 458, 462, 467.) Later that month, Dr. Kauffman saw Hurst again and noted that he was "[o]nly able to get out of the house a couple times a week, he is very tired." (*Id.* at 460.) Moreover, although the Court does not address the ALJ's weighing of Hurst's other treating physicians, Drs. Brent Goodman and Heather Tinsdale, it nonetheless is notable that both opined, consistent with Dr. Kauffman's assessment, that Hurst's condition

---

[1] Hurst argues that the more demanding clear and convincing reasons standard should apply because the opinions of non-examining state agency reviewers are not, alone, substantial evidence. (Doc. 21 at 3.) Though Hurst is correct that non-examining physician opinions, standing alone, may not serve as substantial evidence supporting an ALJ's decision, *see Lester*, 81 F.3d at 831, it does not follow that the ALJ or the Court must ignore contradicting medical opinions from state agency reviewers when determining which standard of review applies. Stated differently, a non-examining physician opinion that contradicts a treating physician opinion may trigger the specific and legitimate reasons standard, even though the non-examining physician's opinion cannot, alone, serve as substantial evidence supporting those specific and legitimate reasons.

prevented him from sustaining full time work. (*Id.* at 481, 524, 525 622.)

Instead of addressing this evidence, the ALJ noted that Dr. Kauffman's treatment records revealed that Hurst "was generally unremarkable neurologically, maintained normal strength in the upper and lower extremities bilaterally and normal gait." (*Id.* at 19.) But, as just explained, Dr. Kauffman did not base his opinion on lack of strength or abnormal gait. Instead, he opined that Hurst's autonomic dysfunction—and the accompanying symptoms of shortness of breath, lightheadedness, and loss of consciousness—precluded him from engaging in activities necessary for sustained work. The ALJ therefore erred by discounting Dr. Kauffman's opinion "for lack of objective evidence of impairments not referenced by the physician," when she was required, instead, to "evaluate the physician's assessment using the grounds upon which it is based." *Orn*, 495 F.3d at 635.

**II. Scope of Remand**

Having determined that the ALJ committed reversible error, the Court has discretion to remand the case for further development of the record, or to credit the improperly rejected evidence as true and remand for an award benefits. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). When deciding whether to remand for an award of benefits, the Court considers whether: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Triechler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1100-01 (9th Cir. 2014).

All three conditions are met here. First, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Kauffman's opinion. Second, because the ALJ's error was not due to a failure to develop the record, further proceedings would not serve a useful purpose. Finally, during the hearing before the ALJ, the VE testified that someone with the limitations assessed by Dr. Kauffman would be unable to sustain full time work. (A.R. 63-64.) Accordingly, had the ALJ given Dr. Kauffman's opinion the deference to

which it is entitled, she would have been required to find Hurst disabled. The Court therefore exercises its discretion to remand for an award of benefits.

## **CONCLUSION**

Although the ALJ is responsible for resolving conflicts in the medical evidence, she must do so in accordance with applicable agency regulations and the governing law of this Circuit. The ALJ's reasons for discounting Dr. Kauffman's opinion do not comport with these standards. Accordingly, for the foregoing reasons, the Court finds that the ALJ's decision is neither free of legal error nor supported by substantial evidence, and that further proceedings would serve no useful purpose.

**IT IS ORDERED** that the final agency decision is **REVERSED** and this matter **REMANDED** for an award of benefits.

Dated this 25th day of September, 2017.

Douglas L. Rayes
United States District Judge